Estate of Sweet: Sweet, Executrix, Appellant, vs.
Department of Taxation, Respondent.

*May 5—June 1, 1955.*

258

For the appellant there were briefs by *Bull & Biart* of Madison, and oral argument by *Nat P. Biart.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons.*

BROWN, J.    When sec. 72.01 (3) (b), Stats., was enacted by ch. 44, Laws of 1903, it was already law in New York and had been construed by the courts of that state. "It is a settled rule in the construction of statutes, that where a statute has received a judicial construction in another state, and is then adopted, it is taken with the construction which has been so given to it." *Draper v. Emerson* (1867), 22 Wis. 147, 150; *Estate of Bullen* (1910), 143 Wis. 512, 520, 128 N. W. 109. The prior New York decisions dealt with cases of life insurance.

". . . the uniform tenor of all adjudications in this state in which the question has been determined is to the effect that, where a policy has been made payable to a named individual,

the proceeds are not subject to the transfer tax of the state of New York [cases cited], but that where a policy is made payable to the decedent's estate, or to his executors, administrators, and assigns without qualification, the proceeds form a part of the estate and are subject to the imposition of a transfer tax." *Matter of Haedrich* (1929), 134 Misc. 741, 743, 236 N. Y. Supp. 395, 399.

Of course, the transfer of interest is the same, whether the insurer makes payment to the executor or to some other named person. Why is it that such a transfer was held taxable in one instance and exempt in the other? The explanation given by *Matter of Voorhees* (1922), 200 App. Div. 259, 263, 193 N. Y. Supp. 168, 171, is that when the proceeds of the policy come to the estate or its representative they are distributed to heirs in accordance with the laws of inheritance and the taxes imposed on inheritance come into operation; while if they are paid by the insurer to some other named beneficiary they do not come into the estate at all and are not affected by the laws, including tax laws, to which inheritances are subject.

The explanation given by *Matter of Haedrich, supra,* is different. In exempting from tax life insurance payable to a corporate trustee for the benefit of the assured's wife and daughter, the court pointed out that, historically, insurance benefits payable to the dependents of the assured are charged with a public interest which has excluded them from taxation and the legislature must clearly express an intention to reverse this policy before the court will believe it so intended. The court said (134 Misc. 747, 236 N. Y. Supp. 402):

"On this theory it must follow that, in any case, the primary test of taxability of proceeds will be whether they are dedicated to the use of individuals toward whom the insured owed some especial duty, and if this requirement be satisfied the courts will, so far as possible, give effect to the dictates of this fundamental public policy and will not seek to draw nice distinctions as to the extent of the assured's moral or

legal obligations to those ultimately benefited nor as to the conduit through which such benefit is to pass.

"The foregoing is not intended to convey the impression that it is beyond the power of the legislature to effect a change in the law so as to make taxable the proceeds of insurance policies payable to specified beneficiaries. It is, however, the opinion of this court that in view of the long-established public policy connected with such matters, no presumption exists that the legislature intends to disturb this well-settled law and policy, and any change in enactment must be quite clear and explicit to be construed as effecting such a result."

The first New York adjudications dealt only with life insurance cases but the reasons given applied as exactly to annuities as they did to life insurance and, when a question concerning the taxability of an annuity arose in that state, it was decided in conformity with the life insurance decisions. Thus, in *Matter of Wilson* (1931), 143 Misc. 742, 744, 257 N. Y. Supp. 230, 233, relying on *Matter of Haedrich, supra,* the court said:

"In so far as this legislative policy of nontaxation of insurance moneys has been applied in this state, there has been no distinction made between the outright payment of the proceeds to a designated beneficiary at the death of the insured, and an annuity or trust income to a designated person which has come into existence at that time. The general policy of exemption applies with equal force to a joint annuity, as here, created in the lifetime of both parties which may be affected by the death of one. In each case the right of the specific beneficiary or life tenant or survivor to receive the amount arises out of the contract of insurance. It is not deemed to be property passing as part of the estate, nor is it to be considered as a taxable interest or transfer taking effect in possession or enjoyment upon death, within the meaning of the tax law. The pertinent rule of statutory construction is that if there be 'a doubt upon the question, it should be resolved in favor of the taxpayer as represented by the executors and against the taxing power.' *Matter of Mc-Mullen*, 199 App. Div. 393, 399, 192 N. Y. Supp. 49, 53,

affirmed 236 N. Y. 518, 142 N. E. 266, citing *In re Fayer-weather*, 143 N. Y. 114, 119, 38 N. E. 278. Certainty as to the rights of the widow, rather than doubt, exists in the present case. In the absence of any specific statutory requirement for an assessment, her interest should be exempted from taxation."

We understand that the New York statute has since been amended, affecting the results of more recent cases.

Coming now to Wisconsin, respondent argues that this state imported New York's interpretation of its statute only in so far as it applied to the proceeds of life insurance policies, since only those adjudications existed when our legislature adopted the New York statute. We cannot agree to this. In our view, by the enactment of the statute Wisconsin took over the principles upon which the New York courts had rested their interpretation of it and, just as those principles which were stated in life insurance matters were decisive when annuity cases arose in New York, so they are decisive whenever appropriate in Wisconsin even though it is not life insurance which is in question.

The *Bullen Case, supra,* dealt in part with life insurance, but included also matters concerning the situs of the taxable estate and the contemplation of death as a motive for the transfer of interest. In deciding the latter questions, which are not involved now, we cited the precedents of the New York courts in construing the New York Inheritance Tax Law and said they were brought here with the statute; but in determining the taxability of the proceeds of the life insurance policy payable to the widow we made no reference to any New York decision, merely reciting in a short paragraph, 143 Wis. at page 523, the policy was payable to Mrs. Bullen with no right in Mr. Bullen to change the beneficiary, and Mrs. Bullen had not relinquished her rights in it. Therefore, we said, the policy remained Mrs. Bullen's property and was not a part of Mr. Bullen's estate, and was not taxable. For

all that appears or can now be ascertained, the decision on this point may have rested on our original view of the law, uninfluenced by any prior New York interpretation of a like statute. Whether our *Bullen* decision, in the part concerning the life insurance feature, was an unexpressed recognition of prior New York decisions or whether it was the result of independent consideration is not material now. At present we have payments due Mrs. Sweet by reason of her husband's retirement agreement. The federal retirement system prescribes the beneficiary and the employee cannot change it. This beneficiary has not relinquished her rights. The payments come direct to her. We consider that the same conditions prevail that produced the decision in the *Bullen Case, supra,* and by reason of the result there the proceeds of the retirement agreement are not taxable under sec. 72.01 (3) (b), Stats.

After the decision in the *Bullen Case, supra,* holding that life insurance proceeds were not taxable to Bullen's widow, the legislature enacted ch. 253, Laws of 1915, which expressly provided that "insurance payable upon the death of any person . . . shall be deemed a part of his estate for the purpose of the tax, and shall be taxable to the person or persons entitled thereto." Though amended in certain respects this act, now known as sec. 72.01 (7), Stats., forms the basis of the present taxation of insurance benefits. Thus there is now a clear and express declaration by the Wisconsin legislature that insurance, payable on the death of the assured, shall be taxed, whether payable to the estate or to another beneficiary. A fundamental rule of tax law is "that a tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist it must be resolved in favor of the person upon whom it is sought to impose the tax." *Wadhams Oil Co. v. State* (1933), 210 Wis. 448, 459, 245 N. W. 646, 246 N. W. 687. Respondent does not contend that retirement benefits like those in question

constitute life insurance. Indeed, it submits much authority to the contrary, in which we concur. Accordingly, we cannot construe the term "insurance payable upon the death of any person," as used in sec. 72.01 (7), as language which expressly and without doubt or ambiguity shows a legislative intent to subject these benefits to taxation. Being taxable neither under sec. 72.01 (3) (b) by virtue of the decision in *Estate of Bullen, supra,* nor as insurance under sec. 72.01 (7), it follows that the order taxing them must be reversed.

*By the Court.*—That portion of the order dealing with the annuity due under the federal civil service retirement system is reversed. Cause remanded with directions to exclude the annuity from the taxable estate.

CURRIE, J. (*dissenting*). Under the statutory terms of employment of the deceased by the federal government an annuity was payable to his widow upon his death while still in government service, which event occurred. Both the government and the deceased employee contributed to the fund from which such annuity to the widow is payable, the employee's contributions thereto being deducted and withheld by the government from his salary. The amount of the annuity payable to the widow is directly dependent upon the total contributions from both the employee and the employer government, which contributions represent a certain fixed percentage of the employee's salary. The employee possessed no right to change the beneficiary of such annuity, as his widow was designated such by statute.

Sub. (3) (b), sec. 72.01, Stats., subjects to Wisconsin inheritance tax a transfer of property without an adequate and full consideration "intended to take effect in possession or enjoyment at or after the death" of the transferor.

The question before this court is whether, as a result of the annuity now payable at the employee's death to the widow, there occurred a transfer of any property from such employee

to his widow "intended to take effect in possession or enjoyment" at the death of the employee. It is the conclusion of the members of this court joining in this dissenting opinion that there was such a transfer, and that the value thereof as of the date of the employee's death is subject to Wisconsin inheritance tax in his estate.

The employee by voluntarily rendering services for the federal government under the terms of employment heretofore described performed the acts which effected the transfer to his widow. The part of his salary withheld to fund the annuity stands in the same category as if he had been paid his salary in full and from such payments he had therefrom paid back to the government the amount of his share of the contributions. The additional contributions made into the fund by the government were in no sense a gift or gratuity by the government but constituted in effect additional compensation for the services the employee performed and were in direct ratio to such services measured in dollars of salary earned.

For cases holding annuities payable to a widow or other beneficiary of a deceased under retirement or pension systems, or employee profit-sharing trusts as being subject to inheritance tax, see: *Borchard v. Connelly* (1953), 140 Conn. 491, 101 Atl. (2d) 497; *Estate of Brackett* (Mich. 1955), 69 N. W. (2d) 164; *Cruthers v. Neeld* (1954), 14 N. J. 497, 103 Atl. (2d) 153; *Estate of Daniel* (1953), 159 Ohio St. 109, 111 N. E. (2d) 252; and *Estate of Dorsey* (1951), 366 Pa. 557, 79 Atl. (2d) 259. It might be argued that these cases are distinguishable from the case at bar because the employees in those cases possessed the right to designate the beneficiary. We do not consider the lack of any right on the part of the employee to name or change the beneficiary prevents a taxable transfer occurring. It is the performing of services by the employee under terms of employment calling for the payment of the annuity to the beneficiary upon

death that constitutes the acts on the part of the employee which effects the transfer.

The majority opinion herein does not attack the foregoing conclusion as being an illogical or unreasonable interpretation of sec. 72.01 (3) (b), Stats., but holds that the instant annuity must be exempted from inheritance tax for the following two reasons: (1) The decision of this court in *Estate of Bullen* (1910), 143 Wis. 512, 128 N. W. 109; and (2) certain decisions of the New York courts rendered long after Wisconsin had adopted its Inheritance Tax Act.

In *Estate of Bullen, supra,* the principal issue was whether certain bank deposits in Chicago banks and various securities and policies of life insurance physically located in Illinois, and which the deceased had placed in a revocable living trust with an Illinois trust company as trustee about four years prior to his death, were subject to Wisconsin inheritance tax. The trial court held such assets, with the exception of one $25,000 life insurance policy, were taxable and the heirs of the deceased appealed, and the state cross-appealed as to the exemption of such policy. With the exception of one brief paragraph, the court's opinion is devoted to the issues raised by the appeal of the heirs, and the trial court's ruling as to the taxability of the living trust assets was upheld as being a transfer made "in contemplation of death" and also "intended to take effect in possession or enjoyment at or after such death." The single paragraph in the opinion given over to consideration of the state's cross appeal as to the life insurance policy stated (p. 523):

"The only error urged on the state's appeal is, that the $25,000 insurance policy assigned to the trust company should have been taxed. It appears that this policy was made payable to *Mrs. Bullen* as beneficiary, and no right reserved in it or otherwise to change the beneficiary. It was assigned to the trust company, but it does not appear that *Mrs. Bullen* relinquished her rights therein; *therefore this property re-*

*mained the property of Mrs. Bullen and was not a part of Mr. Bullen's estate.* The court below, therefore, was right in refusing to tax it." (Emphasis supplied.),

As we of the minority construe the above-quoted paragraph, the court merely held that when the deceased attempted to transfer this particular policy to the Illinois trust company approximately four years before his death, in order to make it subject to the living trust, he had no property right therein which he could convey, as it was already the wife's sole property. This was because she was the designated beneficiary with no right reserved in the husband to change the beneficiary. In referring to the printed case and briefs, we find that the record is silent as to who paid the premiums, and *the state made no contention of taxability based upon any payment of premiums by the husband.* The state based its claim that the policy should be subject to inheritance tax solely on the ground that Mrs. Bullen had assigned the policy to the husband and he in turn had delivered it over to the trust company. The brief submitted in behalf of the heirs answered such argument as follows (page 29 of brief for appellants Mary Lenore Bullen *et al.*) :

"Mrs. Bullen had at first refused to assign this policy, but finally reached an agreement with Mr. Bullen, and did so. (Case 15.) In other words, Mrs. Bullen purchased an interest in the trust agreement, by the assignment to the Northern Trust Company of an asset on which no inheritance tax could be levied by reason of Mr. Bullen's death. It was Mrs. Bullen's transfer of the policy which vested it in the trustee, and the court below taxed only the assets transferred by Mr. Bullen. We insist that in this respect the court below did not err."

On the basis of these facts, we fail to see how the point decided in *Estate of Bullen, supra,* with respect to such policy is at all relevant to the point at issue before us on the instant appeal. The rule of *stare decisis* simply is not applicable.

Turning now to the New York decisions cited in the majority opinion, we find the earliest one in point of date was decided in 1922. While it is true that our Wisconsin Inheritance Act, as originally enacted, was based upon that of New York, our original act was adopted in 1903 (an earlier act enacted in 1899 having been held unconstitutional). *The only construction of such statutes by New York courts which Wisconsin would be deemed to have adopted* by its enactment of similarly worded statutes *would be that which was set forth in New York decisions decided prior to the date Wisconsin passed its Inheritance Tax Act.* Any New York court interpretations of their own act made subsequent to the enactment of Wisconsin's act, or reasoning employed therein, are but persuasive precedents which our court is free to follow or reject at will. They should not be followed when they attempt to emasculate a statute as unambiguously worded as sec. 72.01 (3) (b), Stats.

No New York decision antedating the enactment of the Wisconsin Inheritance Tax Act in 1903, has been cited to this court which held that annuities of any type were exempt from inheritance tax. Neither has any New York case been cited to us, which was decided prior to 1903 and exempted life insurance from inheritance tax, that set forth any reason for so doing which would apply with equal force to annuities. When a New York county surrogate court in 1931 in *Matter of Wilson* (1931), 143 Misc. 742, 257 N. Y. Supp. 230, decided that annuities must be exempted from inheritance tax on the basis of reasoning employed in a case exempting life insurance, it had to resort to a case decided in 1929 which was many years after Wisconsin had enacted its act. On the other hand, the New Jersey court in *Hagy v. Kelly* (1944), 135 N. J. Eq. 436, 39 Atl. (2d) 386, took the opposite view and held that its earlier decisions exempting life insurance were inapplicable to annuities, pointed out the

difference between an annuity and life insurance, and held annuities subject to inheritance tax.

The earlier of the two conflicting reasons advanced by the New York courts for not taxing life insurance payable to a named beneficiary set forth in the majority opinion is that advanced in 1922 in *Matter of Voorhees* (1922), 200 App. Div. 259, 193 N. Y. Supp. 168. The reason therein advanced was that the proceeds did not pass under the laws of inheritance and, therefore, were not part of the estate of the deceased. Such reasoning was rejected by this court in *Will of Allis* (1921), 174 Wis. 527, 534, 184 N. W. 381, wherein it was declared:

*"It is not essential that such proceeds shall become a part of the deceased husband's estate upon his death in order to subject them to inheritance taxation.* It is self-evident that by means of these policies the husband transferred a large part of his estate to his widow, which became effective at his death; this puts the transaction within the field of inheritance taxation." (Emphasis supplied.)

A plain reading of the provisions of sec. 72.01 (3) (b), Stats., indicates clearly that no requirement is imposed, as a condition to taxing a transfer intended "to take effect in possession or enjoyment at or after the death" of the transferor, that the transferee take either by will or by the intestacy statutes of descent and distribution. A transfer by revocable living trust, such as present in *Estate of Bullen,* illustrates that taxability does not depend upon a testamentary or intestate distribution.

For the reasons herein outlined, the determination of the learned trial court subjecting the annuity to inheritance tax should be affirmed.

I am authorized to state that Mr. Chief Justice FAIRCHILD and Mr. Justice MARTIN concur in this dissent.